IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IDENIX PHARMACEUTICALS, INC., UNIVERSITA DEGLI STUDI DI CAGLIARI, CENTRE NATIONAL DE LA RECHERCHE SCIENTIFIQUE and L'UNIVERSITE MONTPELLIER II,<br><br>Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC. and GILEAD PHARMASSET LLC,<br><br>Defendants. | C.A. No. 13-1987-LPS |

## DEFENDANTS' ANSWER AND COUNTERCLAIMS TO COMPLAINT

Defendants Gilead Sciences, Inc. ("Gilead Sciences") and Gilead Pharmasset LLC ("Gilead Pharmasset") (collectively, "Gilead" or "Defendants"), by and through their attorneys, hereby answer the numbered allegations of the Complaint of Idenix Pharmaceuticals, Inc. ("Idenix"), Universita Degli Studi Di Cagliari ("U. Cagliari"), Centre National de la Recherche Scientifique ("CNRS"), and L' Université Montpellier II ("UMII") (collectively, "Plaintiffs"), set forth their affirmative defenses thereto, and allege their Counterclaims below.  Gilead denies the allegations and characterizations in Plaintiffs' Complaint unless expressly admitted in the following paragraphs:

## NATURE OF ACTION

1.     Gilead admits that the Complaint purports to state claims for a declaration of patent infringement pursuant to 35 U.S.C. § 271 and for adjudication of Plaintiffs' priority of invention pursuant to 35 U.S.C. § 291.

## THE PARTIES

2.      On information and belief, Gilead admits that Idenix is a Delaware Corporation with U.S. Corporate Headquarters at 320 Bent Street, Cambridge, Massachusetts 02141.

3.      On information and belief, Gilead admits that U. Cagliari is an Italian university located at Via Università 40, Cagliari, Sardinia, Italy, 09124.

4.      On information and belief, Gilead admits that CNRS is a French organization located at 3, rue Michel-Ange, F-75794 Paris, Cédex 16, France.  Gilead is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 4 of the Complaint, and therefore denies the same.

5.      On information and belief, Gilead admits that UMII is a French university located at 2 Place Eugène Bataillon, F-34095 Montpellier Cédex 5, France.

6.      Gilead admits the allegations set forth in Paragraph 6 of the Complaint.

7.      Gilead admits that Gilead Pharmasset is a limited liability company organized under the laws of the State of Delaware.  Gilead denies the remaining allegations set forth in Paragraph 7 of the Complaint.

## JURISDICTION AND VENUE

8.      Gilead admits that the Complaint purports to state claims of patent infringement that arise under the patent laws of the United States, Title 35 of the United States Code.  Gilead admits that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.  Gilead denies that the Plaintiffs are entitled to any relief pursuant to the claims.

9.      Paragraph 9 contains legal conclusions to which no answer is required.  To the extent that an answer is required, Gilead admits that Gilead Sciences is subject to personal

jurisdiction in this Judicial District for the limited purposes of this action only.  Gilead denies the remaining allegations of Paragraph 9 of the Complaint.

10.     Gilead admits that on December 6, 2013, the United States Food and Drug Administration ("FDA") approved  sofosbuvir, which is a hepatitis C nucleotide analog NS5B polymerase inhibitor indicated for the treatment of chronic hepatitis C infection, as a component of a combination antiviral treatment regimen.  Gilead admits that Gilead Sciences is marketing sofosbuvir as Sovaldi® in the United States, including in the State of Delaware.  Gilead admits that Plaintiffs claim that a substantial controversy exists between Plaintiffs and Gilead Sciences, but specifically denies that Gilead Sciences will commit (or has committed) a tortious act or will infringe (or has infringed) any valid patent owned by Plaintiffs as a result of any actions in this Jurisdiction pertaining to sofosbuvir or otherwise.  Gilead denies the remaining allegations of Paragraph 10 of the Complaint.

11.     Gilead admits that Gilead Sciences is a corporation organized under the laws of the State of Delaware and admits that Gilead Sciences is subject to personal jurisdiction in this Judicial District for the limited purposes of this action only.  Gilead denies the remaining allegations of Paragraph 11 of the Complaint.

12.     Gilead admits that Gilead Pharmasset is a limited liability company organized under the laws of the State of Delaware and admits that Gilead Pharmasset is subject to personal jurisdiction in this Judicial District for the limited purposes of this action only.  Gilead denies the remaining allegations of Paragraph 12 of the Complaint.

13.     Gilead admits venue is proper in this Judicial District for this action.

## FACTUAL BACKGROUND

14.     Upon information and belief, Gilead admits that Idenix is a biopharmaceutical company conducting research in the area of human viral diseases.  Gilead is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 14, and therefore denies the same.

15.     Gilead admits that hepatitis C virus ("HCV") is highly contagious and can lead to serious liver damage.  Gilead admits that HCV is a group of related viruses classified into at least six distinct HCV genotypes (genotypes 1-6).  Gilead admits that at this time Genotype (GT) 1 is most prevalent in the United States and that GT 2 and GT 3 are also observed, while GT 4, GT 5, and GT 6 are more prevalent in Africa and Asia.  Gilead denies the remaining allegations set forth in in Paragraph 15 of the Complaint.

16.     Gilead is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint, and therefore denies the same.

17.     Gilead is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint, and therefore denies the same.

18.     Gilead is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint, and therefore denies the same.

19.     Gilead is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint, and therefore denies the same.

20.     Gilead admits that a non-provisional patent application was filed that led to United States Patent No. 7,608,600 ("the '600 patent").  Gilead admits that the '600 patent purports to claim priority to Provisional Application Nos. 60/392,350, 60/466,194 and 60/470,949 but denies that the '600 patent is entitled to any of these claims of priority.  Gilead

specifically denies that Gilead Sciences' drugs or the use of Gilead Sciences' drugs containing

sofosbuvir infringe any valid claim of the '600 patent.  Except as expressly admitted, Gilead

denies the remaining allegations set forth in Paragraph 20 of the Complaint.

### THE ASSERTED AND ALLEGEDLY INTERFERING PATENT

21.    Gilead admits that Exhibit A to the Complaint appears to be a copy of the '600

patent, entitled "MODIFIED 2' AND 3'-NUCLEOSIDE PRODRUGS FOR TREATING

*FLAVIVIRIDAE* INFECTIONS," issued on October 27, 2009, and listing Plaintiffs as the

assignees.  Gilead denies that the '600 patent was "duly and lawfully issued."  Gilead is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in Paragraph 21 of the Complaint, and therefore denies the same.

### ALLEGED INFRINGEMENT

22.    Gilead admits that Gilead Sciences submitted a New Drug Application ("NDA")

to the FDA for approval of sofosbuvir on April 8, 2013.  Gilead also admits that on June 7, 2013,

it issued a press release announcing that "the U.S. Food and Drug Administration (FDA) has

granted priority review to the company's New Drug Application (NDA) for sofosbuvir, a once-

daily oral nucleotide analogue inhibitor for the treatment of chronic hepatitis C virus (HCV)

infection" and that "FDA has set a target review date under the Prescription Drug User Fee Act

(PDUFA) of December 8, 2013."  Except as expressly admitted, Gilead denies the remaining

allegations of Paragraph 22 of the Complaint.

23.    Gilead admits that during an October 25, 2013 meeting, the Antiviral Drugs

Advisory Committee of the FDA voted unanimously (15-0) that the available data support

approval of once-daily sofosbuvir in combination with ribavirin for the treatment of chronic

hepatitis C in adult patients with genotype 2 and 3 infection and voted unanimously (15-0) that

the available data support approval of sofosbuvir in combination with pegylated interferon and ribavirin for the treatment of chronic hepatitis C in treatment-naïve adult patients with genotype 1 and 4 infection.  Except as expressly admitted, Gilead denies the remaining allegations set forth in Paragraph 23 of the Complaint.

24.     Gilead admits Gilead Sciences filed a declaratory judgment action against Merck & Co., Inc., Merck Sharp & Dohme Corp., (together, "Merck") and Isis Pharmaceuticals, Inc. ("Isis") on August 30, 2013 in the Northern District of California, seeking, among other things, a declaration of non-infringement and invalidity related to U.S. Patent No. 7,105,499 and U.S. Patent No. 8,481,712.  Except as expressly admitted, Gilead denies the remaining allegations of Paragraph 24 of the Complaint.

25.     Gilead admits that in its declaratory judgment complaint against Merck and Isis, Gilead Sciences stated that it "has made substantial preparation to make, sell, and offer to sell sofosbuvir in the United States, including manufacturing sufficient quantities for sale upon FDA approval."  The remaining allegations in Paragraph 25 of the Complaint contain legal conclusions to which no answer is required.  To the extent that an answer is required, Gilead denies the remaining allegations of Paragraph 25 of the Complaint.

26.     Gilead admits that Gilead Sciences is currently marketing sofosbuvir in the United States as Sovaldi®, and that Gilead Sciences made preparations to do so prior to receiving FDA approval on December 6, 2013.  Except as expressly admitted, Gilead denies the remaining allegations of Paragraph 26.

27.     Gilead specifically denies that Gilead Sciences will indirectly infringe (or is indirectly infringing) any valid claims of the '600 patent based on its activities with respect to sofosbuvir.  The remaining allegations in Paragraph 27 of the Complaint contain legal

conclusions to which no response is required.  To the extent a response is required, Gilead denies the allegations in Paragraph 27 of the Complaint.

## GILEAD PHARMASSET'S ALLEGEDLY INTERFERING PATENT

28.     Gilead admits that Exhibit B to the Complaint is a copy of United States Patent No. 8,415,322 ("the '322 patent"), entitled "MODIFIED FLUORINATED NUCLEOSIDE ANALOGUES," issued on April 9, 2013 and listing Gilead Pharmasset LLC as the assignee.

29.     Gilead admits that the '322 patent issued from U.S. patent application Ser. No. 12/878,262 filed on September 9, 2010, which is a continuation of U.S. patent application Ser. No. 12/240,342, filed September 29, 2008, which is a continuation of U.S. patent application Ser. No. 10/828,753, filed April 21, 2004.  Gilead also admits that the '322 patent claims priority to U.S. Provisional Application No. 60/474,368, filed May 30, 2003.  Except as expressly admitted, Gilead denies the remaining allegations of Paragraph 29 of the Complaint.

## COUNT I: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '600 PATENT

30.     Gilead realleges and incorporates by reference each of its answers set forth in Paragraphs 1-29.

31.     Denied.

32.     Gilead admits that the FDA approved label for Sovaldi® (sofosbuvir) states that "SOVALDI is a hepatitis C virus (HCV) nucleotide analog NS5B polymerase inhibitor indicated for the treatment of chronic hepatitis C (CHC) infection as a component of a combination antiviral treatment regimen."  Gilead denies the remaining allegations of Paragraph 32 of the Complaint.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Gilead admits that Gilead Sciences has knowledge of the '600 patent.  Gilead denies the remaining allegations of Paragraph 37 of the Complaint.

38.     Denied.

39.     Paragraph 39 contains legal conclusions to which no answer is required.  To the extent that an answer is required, Gilead admits that a substantial controversy exists as to whether Gilead Sciences infringes the '600 patent and whether the '600 patent is invalid, but Gilead specifically denies that Gilead infringes any valid claim of the '600 patent.  Gilead denies the remaining allegations set forth in Paragraph 39 of the Complaint.

## COUNT II: DECLARATION OF INTERFERENCE BETWEEN THE '600 PATENT AND THE '322 PATENT PURSUANT TO 35 U.S.C. § 291

40.     Gilead realleges and incorporates by reference each of its answers set forth in Paragraphs 1-39.

41.     Denied.

42.     Paragraph 42 contains legal conclusions to which no answer is required.  To the extent that an answer is required, Gilead admits that Plaintiffs purport that the '322 patent and the '600 patent are interfering patents within the meaning of 35 U.S.C. § 291.  Gilead denies the remaining allegations set forth in Paragraph 42 of the Complaint.

43.      Paragraph 43 contains legal conclusions to which no answer is required.  To the extent that an answer is required, Gilead admits that Plaintiffs purport that an interference-in-fact exists between one or more claims of the '322 patent and one or more claims of the '600 patent.  Gilead denies the remaining allegations set forth in Paragraph 43 of the Complaint.

44.    Gilead specifically denies that Plaintiffs are the Senior Party and Gilead Pharmasset is the Junior Party in determining priority of invention in this § 291 action.  The remaining allegations in Paragraph 44 of the Complaint contain legal conclusions to which no answer is required.  To the extent that an answer is required, Gilead denies the allegations of Paragraph 44 of the Complaint.

45.    Denied.

46.    Denied.

## JURY DEMAND

47.    Paragraph 47 does not require a response by Gilead.

## PRAYER FOR RELIEF

Gilead denies that Plaintiffs are entitled to relief of any kind and requests that the Court deny all relief to Plaintiffs, including that requested by Plaintiffs in their Prayer for Relief.

## AFFIRMATIVE DEFENSES

Gilead asserts the following affirmative defenses without prejudice to the denials in this Answer, and without admitting any allegations of the Complaint not otherwise admitted.  Gilead reserves the right to amend its Answer to add additional affirmative defenses, including claims of inequitable conduct, consistent with the facts discovered in this case.

### First Affirmative Defense
### (Invalidity)

48.    The claims of the asserted '600 patent are invalid for failure to satisfy one or more of the conditions of patentability set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112, as well as relevant provisions governing proceedings before the United States Patent and Trademark Office.

**Second Affirmative Defense**
**(Derivation)**

49.     The '600 patent is invalid because the invention(s) were derived and/or

misappropriated from the true inventor.

**Third Affirmative Defense**
**(Noninfringement)**

50.     Gilead Sciences' manufacture, use, sale, offer for sale, or importation into the

United States of sofosbuvir or pharmaceutical compositions containing sofosbuvir does not and

will not directly, indirectly, contributorily and/or by inducement, infringe any valid claim of the

'600 patent, either literally or under the doctrine of equivalents.

**Fourth Affirmative Defense**
**(Laches/Estoppel)**

51.     Plaintiffs' claims for relief are barred under the doctrines of laches and/or

estoppel.

**Fifth Affirmative Defense**

**(Limitation on Damages and Costs)**

52.     Plaintiffs' claims for relief are limited by 35 U.S.C. §§ 286, 287, and/or 288.

**Sixth Affirmative Defense**
**(No Injunction or Enhanced Damages)**

53.     Plaintiffs are not entitled to injunctive relief or enhanced damages because they

have failed to plead the required elements for such relief, and because Plaintiffs have an adequate

remedy at law for any alleged injury.

## GILEAD'S COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Gilead Sciences, Inc.

("Gilead Sciences") and Gilead Pharmasset LLC ("Gilead Pharmasset") (collectively, "Gilead")

assert Counterclaims for a declaratory judgment of non-infringement and invalidity of United

States Patent Nos. 6,914,054 ("the '054 patent"), 7,608,597 ("the '597 patent"), 7,662,798 ("the

'798 patent"), and 8,299,038 ("the '038 patent"), 7,608,600 ("the '600 patent") (collectively "the

Idenix patents"), and interference between  the '600 patent and U.S. Patent No. 8,415,322 ("the

'322 patent") under 28 U.S.C. §§ 2201 and 2202.  Gilead reserves the right to further amend its

Counterclaims, including claims of inequitable conduct, consistent with the facts discovered in

the case.  Gilead, for its Counterclaims, alleges as follows:

**PARTIES**

1.      Gilead Sciences is a company organized and existing under the laws of the State

of Delaware with its principal place of business at 333 Lakeside Drive, Foster City, California

94404.

2.      Gilead Pharmasset is a limited liability company organized under the laws of the

State of Delaware with its principal place of business at 333 Lakeside Drive, Foster City,

California, and is the owner of the '322 patent.

3.      On information and belief, Idenix Pharmaceuticals, Inc. ("Idenix") is a Delaware

Corporation with U.S. Corporate Headquarters at 320 Bent Street, Cambridge, Massachusetts.

4.      On information and belief, Universita Degli Studi Di Cagliari ("U. Cagliari") is an

Italian university located at Via Università 40, Cagliari, Sardinia, Italy, 09124.

5.      On information and belief, Centre National de la Recherche Scientifique

("CNRS") is a French organization located at 3, rue Michel-Ange, F-75794 Paris, Cédex 16,

France.

6.      On information and belief, L'Université Montpellier II ("UMII") is a French

university having a location at 2 Place Eugène Bataillon, F-34095 Montpellier Cédex 5, France.

**THE PATENTS-IN-SUIT**

7.      On July 5, 2005, the '054 patent entitled "Methods and Compositions for Treating Hepatitis C Virus" issued to Jean-Pierre Sommadossi and Paulo LaColla.  A copy of the '054 patent is attached hereto as Exhibit A.

8.      Idenix is listed as the assignee on the face of the '054 patent.

9.      In a Complaint filed on December 1, 2013 in the District Court for the District of Massachusetts, Idenix and U. Cagliari sought a declaratory judgment that Gilead Sciences' commercial sale and offer for sale of sofosbuvir will contribute to and induce infringement of the '054 patent.

10.      On October 27, 2009, the '597 patent entitled "Methods and Compositions for Treating Hepatitis C Virus" issued to Jean-Pierre Sommadossi and Paulo LaColla.  A copy of the '597 patent is attached hereto as Exhibit B.

11.      The '597 patent purports to be a continuation of the application that issued as the '054 patent and shares the same specification.

12.      Idenix and U. Cagliari are listed as assignees on the face of the '597 patent.

13.      In a Complaint filed on December 1, 2013 in the District Court for the District of Massachusetts, Idenix and U. Cagliari sought a declaratory judgment that Gilead Sciences' commercial sale and offer for sale of sofosbuvir will contribute to and induce infringement of the '597 patent.

14.      On October 30, 2012, the '038 patent entitled "Methods and Compositions for Treating Hepatitis C Virus" issued to Jean-Pierre Sommadossi and Paulo LaColla.  A copy of the '038 patent is attached hereto as Exhibit C.

15.     The '038 patent purports to be a continuation of the application that issued as the '597 patent, which purports to be a continuation of the application that issued as the '054 patent. The '038 patent shares the same specification with both the '597 and '054 patents.

16.     Idenix and U. Cagliari are listed as assignees on the face of the '038 patent.

17.     On February 16, 2010, the '798 patent entitled "2' and 3'-Nucleoside Prodrugs for Treating *Flaviviridae* Infections" issued to Paola LaColla, Jean-Pierre Sommadossi, and Gilles Gosselin.  A copy of the '798 patent is attached hereto as Exhibit D.

18.     Idenix, U. Cagliari, CNRS and UMII are listed as assignees on the face of the '798 patent.

19.     The '054 patent, the '597 patent, the '038 patent, and the '798 patent are directed to certain methods and compounds for treating the hepatitis C virus and/or flaviviridae infections and all relate to 2' and 3'-nuceleosides.  The claims of the five patents claim similar subject matter in that certain 2' and 3' nucleosides claimed in the '054, '597 and '600 patents for the treatment of hepatitis C are also present in the method of treatment claims of the '798 and '038 patents.

20.     Idenix acknowledges that the '798, '054, '597 and '038 patents cover similar subject matter because they are all terminally disclaimed over one another.

21.     On October 27, 2009, the '600 patent entitled "Modified 2' and 3'-Nucleoside Prodrugs for Treating *Flaviviridae* Infections" issued to Richard Storer, Gilles Gosselin, Jean-Pierre Sommadossi and Paola LaColla.  A copy of the '600 patent is attached as Exhibit A to the Complaint.

22.     Idenix, U. Cagliari, CNRS and UMII are listed as assignees on the face of the '600 patent.

13

23.    On April 9, 2013, the '322 patent entitled "Modified Fluorinated Nucleoside Analogues," issued.  A copy of the '322 patent is attached as Exhibit B to the Complaint.

24.    Gilead Pharmasset LLC is listed as assignee on the face of the '322 patent.

25.    Gilead Pharmasset LLC is the owner of the '322 patent.

### JURISDICTION AND VENUE

26.    Gilead's counterclaims for Declaratory Judgment arise under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. Gilead is seeking relief pursuant to the  Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

27.    This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338.

28.    This Court has personal jurisdiction over Idenix, U. Cagliari, CNRS, and UMII (together, "Plaintiffs" or "Counterclaim Defendants") because they have all voluntarily submitted themselves to the jurisdiction of this Court as a result of filing their Complaint for patent infringement against Gilead in this Court and a Complaint under 35 U.S.C. § 146 on January 29, 2014 against Gilead Pharmasset LLC, Case No. 14-109 (D. Del.).

29.    Venue is proper in this judicial district for Gilead's counterclaims because Counterclaim Defendants, Idenix, U. Cagliari, CNRS, and UMII consented to this venue by asserting and filing claims of patent infringement against Gilead and by virtue of Counterclaim Defendants' admission in at least paragraph 13 of the Complaint that venue is proper in this district.

## FACTUAL BACKGROUND

### Gilead's Sofosbuvir Drug

30.     Gilead is a research-based biopharmaceutical company that discovers, develops,

and commercializes innovative medicines for life-threatening diseases in areas of unmet medical

need, including treatment for HIV/AIDS, hepatitis, serious respiratory and cardiovascular

conditions, cancer, and inflammation.

31.     Hepatitis C virus ("HCV") is a group of related viruses that infect the liver and

are classified into at least six distinct HCV genotypes (genotypes 1-6) that are spread by contact

with HCV-infected blood.  The prevalence of HCV infection in the U.S. has been estimated

between 3.2 and 5.2 million people.  Since 2007, there have been more deaths in the U.S. due to

HCV than HIV.  HCV infection is the cause of half of all liver cancer deaths in the U.S. and the

most common indication for liver transplants.  For every 100 people infected with HCV, 75-85

will develop chronic infection and 60-70 will suffer from HCV-related complications including

chronic liver disease, cirrhosis, and death.

32.     Traditionally, chronic HCV infection has been treated with a combination of

antiviral medicines—ribavirin, interferons, and, more recently, protease inhibitors.  In addition to

relatively limited efficacy, these available treatments have frequent, debilitating and, at times,

permanent side effects.  Moreover, these treatments must be taken for prolonged periods—24 to

48 weeks—thereby exacerbating the physical and emotional toll on the infected individuals and

their families, which often lead to patient discontinuation of treatment.  While liver

transplantation can be life-saving for HCV-infected individuals in end-stage liver disease,

transplantation presents significant risks and is not a readily available option.  Even when

available, transplantation is costly and requires ongoing post-procedure care, and for HCV positive transplant recipients, reinfection is almost universal.

33. Gilead has developed sofosbuvir, a hepatitis C virus nucleotide analogue NS5B polymerase inhibitor indicated for the treatment of chronic hepatitis C infection.

34. On April 8, 2013, Gilead Sciences filed a New Drug Application ("NDA") with the United States Food and Drug Administration ("FDA") seeking approval of sofosbuvir as a once-daily oral therapy for chronic HCV infection. The data submitted in the NDA support the use of sofosbuvir and ribavirin together as an oral therapy for patients with genotype 2 and 3 HCV infection, and for sofosbuvir in combination with ribavirin and pegylated interferon for treatment-naïve patients with genotype 1 and 4 HCV infection (hereinafter "sofosbuvir NDA").

35. The FDA approved once daily Sovaldi® (sofosbuvir) 400 mg tablets for the treatment of chronic hepatitis C (CHC) infection as a component of a combination antiviral treatment regimen on December 6, 2013.

**Idenix and HCV**

36. Idenix is a biopharmaceutical company. On information and belief, Idenix monitors the drug-development pipelines, clinical trials, and acquisitions of competitor pharmaceutical companies, including activities related to potential therapeutic products for the treatment of HCV infection. On information and belief, Idenix has monitored and continues to monitor such activities as related to Gilead.

37. Both Gilead and Idenix are active litigants against one another in the HCV space. There are pending litigations in Norway, Canada, Australia and, now, the United States related to Gilead's sofosbuvir drug and to both Idenix's and Gilead's patents on certain nucleosides and methods for the treatment of hepatitis C.

16

38.     On December 1, 2013, Idenix filed this suit against Gilead Sciences alleging that the sale, offer for sale or distribution of sofosbuvir will infringe the claims of the '600 patent.

39.     On the same day, and after its filing in this Court, Idenix filed suit against Gilead Sciences in the District of Massachusetts, case 1:13-cv-13052, alleging that the sale, offer for sale or distribution of sofosbuvir infringes the claims of the '054 and '597 patents.

40.     The '038 patent is in the same family as the patents that Idenix has asserted in Massachusetts.  The '038 patent purports to be a continuation of the application that became the '597 patent, which purports to be a continuation of the application that became the '054 patent, and shares essentially the same specification.

41.     The claims of the '798 patent at issue in these counterclaims were rejected by the PTO for obviousness-type double patenting over the '597 and '054 patents that Idenix has asserted in Massachusetts.  The '798 patent is subject to a terminal disclaimer over both the '054 and '597 patents.

42.     Gilead Sciences has the right to manufacture, use, offer to sell, sell and/or import sofosbuvir without a license to the Idenix patents.

43.     The facts alleged herein show that a substantial controversy exists between Gilead and Idenix, parties having adverse legal interests, regarding the validity and alleged infringement of the '597, '054, '600, '798 and '038 patents.

44.     The Court may and should exercise its broad discretion to adjudicate this action under the Declaratory Judgment Act.  There is no better or more effective remedy or forum for resolving the present controversies between the parties regarding sofosbuvir.  Such adjudication will serve the underlying purpose of the Declaratory Judgment Act by resolving legal disputes between Gilead and Counterclaim Defendants regarding Gilead's legal right to manufacture, sell,

offer to sell, and import sofosbuvir.  It will also serve the public interest by settling the adverse

legal rights between Gilead and Counterclaim Defendants as it relates to the availability of a

promising new treatment of chronic hepatitis C infection as a component of a combination

antiviral treatment regimen.  These disputes should be resolved efficiently and economically in

this action, deciding the controversies between the parties with certainty, completeness, and

finality.

**The Pending Interferences between Gilead Pharmasset and Counterclaim Defendants**

45.     On February 22, 2012, the U.S. Patent and Trademark Office ("PTO") Issued a

Declaration of Interference Number 105,871 ("the '871 interference" or the "first interference")

between Gilead Pharmasset's U.S. Patent No. 7,429,572 ("the '572 patent") and Counterclaim

Defendants' U.S. Patent Application No. 12/131,868 ("the '868 application").  In the

Declaration, Jeremy Clark, named inventor of the '572 patent, was initially identified as the

junior party.  Jean-Pierre Sommadossi, Paolo LaColla, Richard Storer, and Gilles Gosselin, who

are named as inventors of the '868 application, were initially identified as the senior party.  As

detailed more fully below, as a result of motion practice in the first interference, Idenix's '868

application was denied the benefit of earlier filed applications because they failed to enable one

of skill in the art to practice the embodiment disclosed in the interference count.  As a result,

Jeremy Clark was named as the senior party.

46.     Gilead Pharmasset is identified as the real party-in-interest to the '572 patent and

is identified as "Clark" in the first interference.

47.     Counterclaim Defendants are identified as the real parties-in-interest to the '868

application and is identified as "Sommadossi" in the first interference.

18

48.     Gilead Pharmasset's '322 patent, the patent in the present § 291 action, is related to Gilead Pharmasset's '572 patent, the patent at issue in the first interference.  The '322 patent claims priority to U.S. Provisional Application No. 60/474,368 ("the '368 application"), filed on May 30, 2003.

49.     Counterclaim Defendants' '868 application at issue in the first interference purports to be related to the '600 patent, which is at issue in the § 291 proceeding before this Court.  The '868 application states that it is a divisional of U.S. Patent Application No. 10/608,907 ("the '907 application"), which issued as the '600 patent.  The '868 application, like the '600 patent, is entitled "MODIFIED 2' AND 3'-NUCLEOSIDE PRODRUGS FOR TREATING *FLAVIVIRIDAE* INFECTIONS" and was filed on June 2, 2008.

50.     During the first interference, Counterclaim Defendants filed several motions, including a motion for benefit of priority to U.S. Patent Application No. 60/392,350 ("the '350 application").  Both the '600 patent and the '868 application purport to claim priority to the '350 application.

51.     During the first interference, Gilead Pharmasset filed several motions, including (1) a motion to deny Counterclaim Defendants the accorded benefit of the '907 application; and (2) a motion for benefit of priority to the '368 application.

52.     On March 22, 2013, the Patent Trial and Appeal Board ("PTAB") issued an Order deciding Counterclaim Defendants' and Gilead Pharmasset's motions.  Specifically, the PTAB denied Counterclaim Defendants' motion to be accorded benefit to the '350 application and granted Gilead Pharmasset's motion to deny Counterclaim Defendants the accorded benefit of the '907 application.  In so doing, the PTAB concluded that the '907 application "is not enabling

19

for an embodiment encompassed by" the Count of the first interference.  (March 22, 2013

Decision on Motions, Paper 426 at 25, attached hereto as Exhibit E)

53.    The PTAB vacated the benefit accorded to Counterclaims Defendants in the

Declaration of Interference as to the '907 application and denied Counterclaim Defendants

benefit to the '350 application.  As a result, the PTAB concluded Counterclaim Defendants were

not entitled to any priority date prior to June 2, 2008—the filing date of the '868 application.

54.    The PTAB granted Gilead Pharmasset's motion to be accorded benefit of the

filing date of the '368 application—May 30, 2003.

55.    Having determined that Counterclaim Defendants were not entitled to any priority

date earlier than June 2, 2008, while Gilead Pharmasset was entitled to a priority date of May 30,

2003, the PTAB redesignated the parties.  On March 22, 2013, the PTAB issued a redeclaration

designating Clark (Gilead Pharmasset) senior party and Sommadossi (Counterclaim Defendants)

junior party for all further proceedings in the first interference, thus shifting the burden of proof

to Sommadossi.

56.    On January 29, 2014 the PTAB issued a judgment against Counterclaim

Defendants refusing the claims of the '868 patent that corresponded to the interference count.  In

the corresponding Decision, the PTO found that "Sommadossi did not conceive of the subject

matter before Clark's accorded benefit date and, even if it had been the first to conceive, it was

not diligent in reducing the invention to practice."  (Jan. 29, 2014 Decision, Paper 1007 at 2,

attached hereto as Exhibit F)

57.    On December 3, 2013, the PTO Issued a Declaration of Interference Number

105,981 ("the '981 interference" or the "second interference") between Gilead Pharmasset's U.S.

Patent Application No. 11/854,218 ("the '218 application") and the '600 patent.  Gilead

Pharmasset and Counterclaim Defendants have filed lists of intended motions, but there have been no motions filed to date in the second interference. On February 5, 2014, the PTAB issued an Order to Show Cause stating "it appears that Storer [Counterclaim Defendants] cannot prevail on priority as it cannot obtain priority benefit of the '907 application" and ordering that Storer (Counterclaim Defendants) show cause why judgment should not be entered against it in light of the priority finding in the first interference.  (Feb. 5, 2014 Order to Show Cause, Paper No. 21, attached hereto as Exhibit G)

### Count One
### (Declaratory Judgment of Non-Infringement of the '054 Patent)

58.     Gilead realleges and incorporates herein all allegations in paragraphs 1-57 of these Counterclaims.

59.     Idenix and U. Cagliari have asserted the '054 patent against Gilead Sciences in the District of Massachusetts, Case 1:13-cv-13052 filed December 1, 2013, alleging that Gilead Sciences' sale, offer for sale and distribution in the United States of sofosbuvir or pharmaceutical compositions containing sofosbuvir will infringe the '054 patent under 35 U.S.C. § 271(a), (b), and/or (c).

60.     An actual and justiciable case or controversy exists between Gilead Sciences and Idenix and U. Cagliari regarding whether Gilead Sciences infringes any claim of the '054 patent.

61.     The manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA has not infringed and does not infringe, directly or indirectly, any valid claim of the '054 patent, either literally or under the doctrine of equivalents.

62.     Gilead Sciences is entitled to a judgment declaring that the manufacture, use, offer for sale, sale and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not constitute infringement of the '054 patent.

**COUNT TWO**
**(Declaratory Judgment of Invalidity of the '054 Patent)**

63.     Gilead realleges and incorporates herein all allegations in paragraphs 1-62 of these Counterclaims.

64.     An actual and justiciable case or controversy exists between Gilead Sciences and Idenix and U. Cagliari regarding the invalidity of the '054 patent.

65.     The claims of the '054 patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112, as well as relevant provisions governing proceedings before the United States Patent and Trademark Office.

66.     Gilead Sciences is entitled to a judicial declaration that the claims of the '054 patent are invalid.

**COUNT THREE**
**(Declaratory Judgment of Non-Infringement of the '597 Patent)**

67.     Gilead realleges and incorporates herein all allegations in paragraphs 1-66 of these Counterclaims.

68.     Idenix and U. Cagliari have asserted the '597 patent against Gilead Sciences in the District of Massachusetts, Case 1:13-cv-13052 filed December 1, 2013, alleging that Gilead Sciences' sale, offer for sale and distribution in the United States of sofosbuvir or pharmaceutical compositions containing sofosbuvir will infringe the '597 patent under 35 U.S.C. § 271(a), (b), and/or (c).

69.     An actual and justiciable case or controversy exists between Gilead Sciences and Idenix and U. Cagliari regarding whether Gilead Sciences infringes any claim of the '597 patent.

70.     The manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA has not infringed and does not infringe, directly or indirectly,  any valid claim of the '597 patent, either literally or under the doctrine of equivalents.

71.     Gilead Sciences is entitled to a judgment declaring that the manufacture, use, offer for sale, sale and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not constitute infringement of the '597 patent.

## COUNT FOUR
### (Declaratory Judgment of Invalidity of the '597 Patent)

72.     Gilead realleges and incorporates herein all allegations in paragraphs 1-71 of these Counterclaims.

73.     An actual and justiciable case or controversy exists between Gilead Sciences and Idenix and U. Cagliari regarding the invalidity of the '597 patent.

74.     The claims of the '597 patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112, as well as relevant provisions governing proceedings before the United States Patent and Trademark Office.

75.     Gilead Sciences is entitled to a judicial declaration that the claims of the '597 patent are invalid.

## COUNT FIVE
### (Declaratory Judgment of Non-Infringement of the '038 Patent)

76.     Gilead realleges and incorporates herein all allegations in paragraphs 1-75 of these Counterclaims.

77.     Idenix and U. Cagliari have asserted the '054 and '597 patents against Gilead Sciences in the District of Massachusetts, Case 1:13-cv-13052 filed December 1, 2013, alleging that Gilead's sale, offer for sale and distribution in the United States of sofosbuvir or pharmaceutical compositions containing sofosbuvir will infringe the '054 and '597 patents under 35 U.S.C. § 271(a), (b), and/or (c).

78.     The '038 patent purports to be a continuation of the application that issued as the '597 patent, which purports to be a continuation of the application that issued as the '054 patent. The '038 patent claims claim similar subject matter to the '597 and '054 patents' claims.

79.     Idenix and U. Cagliari have not stated which claims of the '054 or '597 patents they believe Gilead Sciences' sale of sofosbuvir infringes, or under what theory they believe that Gilead Sciences' sale of sofosbuvir would infringe.  While Gilead Sciences denies any infringement, Idenix and U. Cagliari may assert that Gilead Sciences infringes claims of the '597 and/or '054 patents that are similar to the claims of the '038 patent.

80.     An actual and justiciable case or controversy exists between Gilead Sciences and Idenix and U. Cagliari regarding whether Gilead Sciences infringes any claim of the '038 patent.

81.     The manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA has not infringed and does not infringe, directly or indirectly, any valid claim of the '038 patent, either literally or under the doctrine of equivalents.

82.     Gilead Sciences is entitled to a judgment declaring that the manufacture, use, offer for sale, sale and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not constitute infringement of the '038 patent.

## COUNT SIX
### (Declaratory Judgment of Invalidity of the '038 Patent)

83.     Gilead realleges and incorporates herein all allegations in paragraphs 1-82 of these Counterclaims.

84.     The '038 patent purports to be a continuation of the application that issued as the '597 patent, which purports to be a continuation of the application that issued as the '054 patent. The '038 patent claims claim similar subject matter to the '597 and '054 patents claims.

85.     An actual and justiciable case or controversy exists between Gilead Sciences and Idenix and U. Cagliari regarding the invalidity of the '038 patent.

86.     The claims of the '038 patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112, as well as relevant provisions governing proceedings before the United States Patent and Trademark Office.

87.     Gilead Sciences is entitled to a judicial declaration that the claims of the '038 patent are invalid.

## COUNT SEVEN
### (Declaratory Judgment of Non-Infringement of the '798 Patent)

88.     Gilead realleges and incorporates herein all allegations in paragraphs 1-87 of these Counterclaims.

89.     Idenix and U. Cagliari have asserted the '054 and '597 patents against Gilead Sciences in the District of Massachusetts, Case 1:13-cv-13052 filed December 1, 2013, alleging

25

that Gilead's sale, offer for sale and distribution in the United States of sofosbuvir or pharmaceutical compositions containing sofosbuvir will infringe the '054 and '597 patents under 35 U.S.C. § 271(a), (b), and/or (c).

90. The '798 patent claims claim similar subject matter to the '597 and '054 patents' claims.

91. Idenix and U. Cagliari have not stated which claims of the '054 or '597 patents they believe Gilead Sciences' sale of sofosbuvir infringes, or under what theory they believe that Gilead Sciences' sale of sofosbuvir would infringe. While Gilead Sciences denies any infringement, Idenix and U. Cagliari may assert that Gilead Sciences infringes claims of the '597 and/or '054 patents that are similar to the claims of the '798 patent.

92. An actual and justiciable case or controversy exists between Gilead Sciences and Counterclaim Defendants regarding whether Gilead Sciences infringes any claim of the '798 patent.

93. The manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA has not infringed and does not infringe, directly or indirectly, any valid claim of the '798 patent, either literally or under the doctrine of equivalents.

94. Gilead Sciences is entitled to a judgment declaring that the manufacture, use, offer for sale, sale and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not constitute infringement of the '798 patent.

## COUNT EIGHT
### (Declaratory Judgment of Invalidity of the '798 Patent)

95. Gilead realleges and incorporates herein all allegations in paragraphs 1-94 of these Counterclaims.

26

96. The '798 patent claims claim similar subject matter to the '597 and '054 patents' claims, which were asserted in the District of Massachusetts.

97. An actual and justiciable case or controversy exists between Gilead Sciences and Counterclaim Defendants regarding the invalidity of the '798 patent.

98. The claims of the '798 patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112, as well as relevant provisions governing proceedings before the United States Patent and Trademark Office.

99. Gilead Sciences is entitled to a judicial declaration that the claims of the '798 patent are invalid.

## COUNT NINE
### (Declaratory Judgment of Non-Infringement of the '600 Patent)

100.      Gilead realleges and incorporates herein all allegations in paragraphs 1-99 of these Counterclaims.

101.      Counterclaim Defendants have asserted the '600 patent against Gilead Sciences in this court alleging that Gilead Sciences' sale, offer for sale and distribution in the United States of sofosbuvir or pharmaceutical compositions containing sofosbuvir will infringe the '600 patent under 35 U.S.C. § 271(a), (b), and/or (c).

102.      An actual and justiciable case or controversy exists between Gilead Sciences and Counterclaim Defendants regarding whether Gilead Sciences infringes any valid claim of the '600 patent.

103.      The manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA has not infringed and does not

infringe, directly or indirectly, any valid claim of the '600 patent, either literally or under the doctrine of equivalents.

104.     Gilead Sciences is entitled to a judgment declaring that the manufacture, use, offer for sale, sale and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA before expiration of the '600 patent does not and will not constitute infringement of the '600 patent.

## COUNT TEN
### (Declaratory Judgment of Invalidity of the '600 Patent)

105.     Gilead realleges and incorporates herein all allegations in paragraphs 1-104 of these Counterclaims.

106.     An actual and justiciable case or controversy exists between Gilead Sciences and Counterclaim Defendants regarding the invalidity of the '600 patent.

107.     The claims of the '600 patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112, as well as relevant provisions governing proceedings before the United States Patent and Trademark Office.

108.     Gilead Sciences is entitled to a judicial declaration that the claims of the '600 patent are invalid.

## COUNT ELEVEN
### (Priority in Interference Between '322 Patent and '600 Patent)

109.     Gilead realleges and incorporates herein all allegations in paragraphs 1-108 of these Counterclaims.

110.     On February 22, 2012, the PTO declared the '871 interference between Gilead Pharmasset's '572 patent and Counterclaim Defendants' '868 application.

111.     Gilead Pharmasset's '322 patent is related to the '572 patent. The '322 patent claims priority to the '368 application, which has a filing date of May 30, 2003.

112.     The '600 patent and '868 applications purport to claim priority to the '350 application.

113.     For at least the same reasons articulated by the PTAB in the first interference, Counterclaim Defendants' '600 patent is not entitled to the benefit of the '350 application.

114.     Gilead Pharmasset's '322 patent is entitled to the benefit of the '368 application. Accordingly, the effective filing date of the '322 patent is May 30, 2003.

115.     Counterclaim Defendants assert that the '322 patent and the '600 patent are interfering patents, within the meaning of 35 U.S.C. § 291, in that at least one claim of each patent claims the same or substantially the same subject matter.

116.     Counterclaim defendants assert that an interference-in-fact exists between one or more claims of the '600 patent and the '322 patent.

117.     An actual and justiciable case or controversy exists between Gilead Pharmasset and Counterclaim Defendants regarding the '322 patent and the '600 patent.

118.     Gilead Pharmasset's '322 patent has an earlier effective filing date than the purported effective filing date of Counterclaim Defendants' '600 patent. Accordingly, Gilead Pharmasset is the Senior Party and Counterclaim Defendants are the Junior Party in determining priority of invention in this § 291 action.

119.     Gilead Pharmasset is entitled to a judgment declaring that the inventor of the '322 patent were the first to invent the subject matter and that the '322 patent therefore has priority over the '600 patent.

120.    Gilead Pharmasset is entitled to a judgment declaring that the interfering claims of the '600 patent are invalid.

## PRAYER FOR RELIEF

WHEREFORE, Gilead respectfully requests that this Court enter the following relief:

a.    Enter a judgment in favor of Gilead;

b.    Declare under 28 U.S.C. § 2201 that the manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not infringe any valid claim of the '054 patent, whether directly, indirectly, contributorily, by inducement, literally, or under the doctrine of equivalents;

c.    Declare under 28 U.S.C. § 2201 that the manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not infringe any valid claim of the '597 patent, whether directly, indirectly, contributorily, by inducement, literally, or under the doctrine of equivalents;

d.    Declare under 28 U.S.C. § 2201 that the manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not infringe any valid claim of the '038 patent, whether directly, indirectly, contributorily, by inducement, literally, or under the doctrine of equivalents;

e.    Declare under 28 U.S.C. § 2201 that the manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA does not and will not infringe any valid claim of the '798 patent, whether directly, indirectly, contributorily, by inducement, literally, or under the doctrine of equivalents;

f.    Declare under 28 U.S.C. § 2201 that the manufacture, use, offer for sale, sale, and/or importation of sofosbuvir and the drug product that is the subject of the sofosbuvir NDA

does not and will not infringe any valid claim of the '600 patent, whether directly, indirectly, contributorily, by inducement, literally, or under the doctrine of equivalents;

g.      Declare under 28 U.S.C. § 2201 that the claims of the '054 patent are invalid;

h.      Declare under 28 U.S.C. § 2201 that the claims of the '597 patent are invalid;

i.      Declare under 28 U.S.C. § 2201 that the claims of the '038 patent are invalid;

j.      Declare under 28 U.S.C. § 2201 that the claims of the '798 patent are invalid;

k.      Declare under 28 U.S.C. § 2201 that the claims of the '600 patent are invalid;

l.      Declare under 28 U.S.C. § 2201 that the inventor of the '322 patent was the first to invent the subject matter and that the '322 patent therefore has priority over the '600 patent;

m.      Issue an injunction enjoining Plaintiffs and their agents, representatives, attorneys, employees, and those persons in active concert or participation with them who receive actual notice herefrom from threatening or initiating infringement litigation against Gilead or its customers, dealers, or suppliers, or any prospective or present sellers, dealers, distributors or customers of Gilead, or charging them either orally or in writing with infringement of the '600, '054, '597, '038, and '798 patents;

n.      Declare that this is an exceptional case as defined by 35 U.S.C. § 285 and award Gilead its attorneys' fees and costs;

o.      All other and further relief the Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Gilead hereby requests a trial by jury of all issues so triable.

Dated:  February 6, 2014          FISH & RICHARDSON P.C.


                              By:  /s/ W. Chad Shear
                                   W. Chad Shear (#5711)
                                   Douglas E. McCann (#3852)
                                   Martina Tyreus Hufnal (#4771)
                                   Michelle Nerozzi Ankenbrand (#5842)
                                   222 Delaware Avenue, 17th Floor
                                   P.O. Box 1114
                                   Wilmington, DE 19899
                                   Telephone:  (302) 652-5070
                                   Facsimile:   (302) 652-0607
                                   shear@fr.com
                                   hufnal@fr.com
                                   nerozziankenbrand@fr.com

                                   Frank E. Scherkenbach
                                   FISH & RICHARDSON P.C.
                                   One Marina Park Drive
                                   Boston, MA 02210-1878
                                   Telephone:  (617) 542-5070
                                   Facsimile:   (617)  542-8906
                                   scherkenbach@fr.com

                                   Jonathan E. Singer
                                   FISH & RICHARDSON P.C.
                                   3200 RBC Plaza
                                   60th South Sixth Street
                                   Minneapolis, MN 55402
                                   Telephone:  (612) 335-5070
                                   Facsimile:   (612) 288-9696
                                   singer@fr.com

                                   ATTORNEYS FOR DEFENDANT
                                   GILEAD SCIENCES, INC. AND GILEAD PHARMASSET
                                   LLC