IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IDENIX PHARMACEUTICALS, INC., UNIVERSITA DEGLI STUDI DI CAGLIARI, CENTRE NATIONAL DE LA RECHERCHE SCIENTIFIQUE and L'UNIVERSITÉ MONTPELLIER II,<br><br>        Plaintiffs,<br><br>  v.<br><br>GILEAD SCIENCES, INC. and GILEAD PHARMASSET LLC,<br><br>        Defendants. | C.A. No. 13-1987-LPS |
| IDENIX PHARMACEUTICALS, INC., UNIVERSITA DEGLI STUDI DI CAGLIARI, CENTRE NATIONAL DE LA RECHERCHE SCIENTIFIQUE and L'UNIVERSITÉ MONTPELLIER II,<br><br>        Plaintiffs,<br><br>  v.<br><br>GILEAD PHARMASSET LLC,<br><br>        Defendant. | C.A. No. 14-109-LPS |
| IDENIX PHARMACEUTICALS, INC. and UNIVERSITA DEGLI STUDI DI CAGLIARI,<br>        Plaintiffs,<br><br>  v.<br><br>GILEAD SCIENCES, INC.,<br><br>        Defendant. | C.A. No. 14-846-LPS |

**PLAINTIFFS' JANUARY 21, 2016 LETTER TO THE HONORABLE CHIEF JUDGE
LEONARD P. STARK REGARDING DEFENDANTS' MOTION TO COMPEL**

January 21, 2016

The Honorable Leonard P. Stark   **VIA ELECTRONIC FILING**
United States District Court
844 N. King Street
Wilmington, DE  19801

    Re:    *Idenix Pharmaceuticals, Inc. et al. v. Gilead Sciences, Inc.*,
           C.A. Nos. 13-1987-LPS-CJB, 14-109-LPS-CJB and 14-846-LPS-CJB

Dear Chief Judge Stark:

      This Court should deny Defendants' motion to compel ("MTC") discovery of the work product of Idenix's former legal counsel, Dr. Weingarten and his firm Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan") in connection with experiments conducted by Albany Molecular Research, Inc. ("AMRI") and its employee, Dr. Clemens.  Idenix has already produced **everything** relied on by Dr. Clemens to conduct the "Deoxo-Fluor Experiment."  The only remaining discovery Gilead seeks are counsel's strategic decisions—information that was never conveyed to Dr. Clemens.  Such information is privileged and irrelevant.  Gilead moved to compel the **exact same discovery** in the related Merck case in the N.D. California, but Judge Grewal **denied** that motion, finding the information was "plainly opinion work product" and irrelevant to enablement.  (Exh. A at 5, 7.)

**1.**        **Background**:  This case involves Idenix's patents covering compounds used for treating the Hepatitis C virus.  Citing the work of Dr. Griffon—an Idenix employee who is not an inventor and who did not act as the hypothetical skilled artisan—Gilead claims the Idenix patents do not enable a person of skill in the art to synthesize the claimed compounds.  There is no evidence that Dr. Griffon had the Idenix patents, much less used their teaching to guide his efforts.  And whether a particular non-inventor, without the patent in hand, succeeded in making a compound is wholly irrelevant to the inquiry of whether that patent enables the hypothetical person of skill in the art to practice the claimed invention.  The California court recently came to the same conclusion when considering Gilead's attempts to use Dr. Griffon's work to show lack of enablement of another set of patents that he likewise did not use in his work.  (Exh. A at 7.)

      Nonetheless, in response to Gilead's arguments in foreign jurisdictions, counsel for Idenix retained AMRI to reproduce the Deoxo-Fluor Experiment performed by Dr. Griffon under the UK procedures.  As counsel for Idenix, Dr. Weingarten was the primary point of contact with Dr. Clemens.  Dr. Weingarten provided Dr. Clemens with the Protocol used in the experiment. Dr. Clemens followed the **exact same** procedure **to synthesize** the compound as Dr. Griffon followed.  (Exh. B. at ¶ 12.)  His procedure differed only in the analytical methods used to detect and identify the compounds synthesized—differences irrelevant to whether Dr. Griffon actually made the compound.  While Gilead would prefer that the experiment had failed, Dr. Clemens' reproduction of the synthesis established that Dr. Griffon did, in fact, produce a claimed compound.  Then, per UK procedures, Dr. Clemens repeated the experiment **with Gilead's lawyers in attendance**.  (Exhs. C at ¶ 6 & D at ¶ 36.)  As required by UK law, everything that was conveyed to Dr. Clemens for running the experiments, including the Protocol he used, and all of the data generated from them, has been produced to Gilead.  (Exhs. C at ¶ 9 & D at ¶ 41.) Idenix's UK counsel provided a sworn affidavit confirming that all such documents had been produced to Gilead.  (Exh. C at ¶ 13.)

      Not satisfied with Idenix's comprehensive disclosures, Gilead embarked on a worldwide campaign to intrude into counsel's thought processes by demanding discovery of protected work

product from AMRI, Dr. Clemens, Merck, Finnegan, Dr. Weingarten, as well as Idenix.[1] The discovery Gilead seeks constitutes counsel's strategic decisions and other information that was **never** relayed to Dr. Clemens nor relied on by him. Recently, the California court squarely addressed this very issue. It flatly rejected Gilead's discovery demands. (Exh. A at 5.) The court explained that "[w]hether Weingarten himself created the protocol or merely reviewed it, it would be impossible to separate out the work he did as a scientist and the work he did as an attorney." (*Id.* at 5-6.) Indeed, any adjustments Dr. Weingarten may have made to the Protocol "would necessarily have been done in consideration of its purpose in countering Gilead's litigation position, and the scientific facts surrounding any differences between the protocol and Griffon's procedures were necessarily motivated by attorney thought processes." (*Id.* at 6.) Gilead tries to dismiss the California opinion as inapplicable, suggesting that the California court decided the issue solely on relevance grounds. This is incorrect. Judge Grewal analyzed the work product issues, rejected the exact same arguments that Gilead makes here, and found that the information Gilead seeks is protected from disclosure.[2] (*Id.*)

**2.     Gilead's Attempt To Intrude Into Privileged Communications And Attorney Work Product Is Entirely Improper.** In this Circuit, even if a party makes "the requisite showing of need and undue hardship, courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003). This "core" or "opinion" work product is "generally afforded near absolute protection from discovery." *Id.* (quoting *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997). As the California court held, Gilead is seeking the mental impressions of Idenix's attorneys (i.e. opinion attorney work product). (Exh. A at 5-6.) Gilead has not shown, and cannot show, that it is entitled to intrude into this protected work product.

But Gilead has not even met the burden of showing "substantial need" and "undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). Gilead has **no** need for discovery from Dr. Weingarten or Finnegan. Gilead has already received full disclosure of everything relating to the Deoxo-Flour Experiments to which it is entitled. (Exh. C at ¶ 9.) Dr. Clemens produced a Rule 26 report in the California case. Both Dr. Clemens and Dr. Griffon have been cross-examined twice at trial, and Dr. Clemens was deposed in the California proceeding. Gilead and its experts can compare the Protocol to Dr. Griffon's lab notebooks and mount their criticisms based upon any alleged differences or upon anything in the Protocol they think is scientifically unsound. Gilead can run its own experiments and make any changes it sees fit. But, Gilead does **not** need discovery into Idenix's counsel's thoughts and work product to respond to Dr. Clemens' testing and testimony. The California court reached the same conclusion. (Exh. A at 7.)

Gilead's arguments here are much like those rejected in the *United States v. 73.92 Acres of Land*, No. 3:09cv802-TSL-MTP, 2011 WL 3471096, at *3 (S.D. Miss. Aug. 8, 2011) (finding that party that received an expert report, was able to cross-examine the expert, and "fully understand the assumptions and data the [expert] relied on in rendering their reports" were not

---

[1] Gilead brought an action under 28 U.S.C. § 1782 to obtain discovery from AMRI for use in Canada; that request was denied. *Gilead Sciences, Inc. v. Albany Molecular Research, Inc.*, No. 1:14-MC-00056-LEK-CFH (N.D.N.Y. Nov. 17, 2014). Gilead moved to compel the discovery from Merck in California, but that motion was denied. (Exh. A.) Gilead issued subpoenas to AMRI (in New York), Dr. Clemens (also in New York), Dr. Weingarten (in Atlanta), and Finnegan (in Washington, DC). The New York case brought to quash the AMRI subpoena remains pending. *In re Motion to Quash Subpoenas*, No. 1:15-mc-00037-DNH-CFH (N.D.N.Y. 2015). The Atlanta and Washington cases brought to quash the Weingarten and Finnegan subpoenas have been transferred to this Court for resolution. *In re Motion to Quash Subpoenas*, Nos. 1:15-mc-00342/-00345-LPS.

[2] Notably, in the New York case, Gilead described the motion to compel in California as "nearly identical to Gilead's motion to compel here" Court. (Exh. E. at 2.) After losing in California, Gilead now claims that the California court's decision "has no bearing on this case[.]" (MTC at 3.) Gilead's positions are irreconcilable.

entitled to discovery from counsel). Gilead has everything it needs. It has the Protocol Dr. Clemens followed in his testing. It has been able to examine and cross-examine Dr. Clemens several times. Gilead's dislike for Dr. Clemens' evidence or his results and its efforts to create a ruse to hide behind or some new avenue to try to counter the evidence is no justification for allowing Gilead to intrude upon work product and privileged communications. The California court agrees. (*See generally* Exh. A.)

**3.   Gilead's Unsupported Arguments Are False And Misleading.** Gilead continues to baselessly speculate, in the face of evidence to the contrary, that Idenix and Dr. Weingarten participated in some sort of "optimization" of the Protocol or "further testing" prior to submitting the Protocol to Dr. Clemens. (MTC at 2-3.) Gilead knows this is false. In the UK litigation, Gilead submitted a formal request to determine whether any other testing to "optimize" the Protocol had been performed beyond the disclosed Deoxo-Fluor Experiments. (Exh. C at ¶ 12.) In response, Idenix provided a sworn statement that "no other testing had been performed." (*Id.* at ¶ 13.) Similarly, in the California proceedings, Merck's counsel submitted a declaration again stating that neither AMRI nor any other lab did any work to optimize the Protocol before Dr. Clemens reproduced Dr. Griffon's Deoxo-Fluor Experiments. (Exh. B at ¶ 12.) Gilead's filing of serial discovery requests seeking documents that do not exist is harassing and improper.

Gilead also suggests that Idenix has waived work product protection and that Dr. Weingarten was functioning as a testifying scientific expert, rather than Dr. Clemens. Not so. Dr. Weingarten was a lawyer and member of Finnegan's legal team when he represented Idenix. As such, he was acting as an attorney when he provided the Protocol to Dr. Clemens; his technical background is irrelevant. Lawyers having technical experience is not uncommon in patent cases. Gilead's law firm employs many Ph.D.s, including at least four that have appeared in these cases. Having a technical background does not transform a lawyer's work product into discoverable information. The California court correctly held that any strategic decisions that Dr. Weingarten made related to the Protocol is protected work product. (Exh. A at 5-6.)

Gilead claims that Idenix is asserting privilege as both a "shield and sword." (MTC at 2.) This is not true. The purpose of Dr. Clemens' work was to replicate Dr. Griffon's synthesis. Gilead has full access to the Protocol that Dr. Clemens used and, more importantly, to the lab notebooks and reports in which Dr. Griffon recorded the experiment Dr. Clemens repeated. If Gilead thinks there was some "optimization" of the Protocol, it could run its own experiments, which, tellingly, it has not done. Gilead is not, however, entitled to peek behind the curtain into counsel's thoughts and processes.

The cases Gilead cites in support of its waiver argument are inapposite. In *CP Kelco U.S. Inc. v. Pharmacia Corp.* the discovery dispute concerned documents shown to an expert witness before his testimony at a deposition. 213 F.R.D. 176, 177 (D. Del. 2003). Here it is undisputed that everything provided to Dr. Clemens has been disclosed. Similarly, as Gilead acknowledges, both *Koninklijke Philips Electronics N.V. v. Zoll Medical Corp.*, No. 10-11041-NMG, 2013 WL 812484 (D. Mass. Mar. 4, 2013) and *Medeva Pharma Suisse A.G. v. Roxane Labs., Inc.,* No. 07-5165 (FLW), slip op. at 1 (D.N.J. July 21, 2010) concern the disclosure of the actual protocols used to perform the experimentation. Here, the Protocol used by Dr. Clemens has been disclosed to Gilead. Finally, *NXIVM Corp. v. O'Hara*, concerned disclosure of privileged documents for purposes other than litigation. 241 F.R.D. 109, 142 (N.D.N.Y. 2007). It is entirely inapposite.

**4.   The Federal Rules Protect The Information Gilead Is Seeking**: All discoverable information relating to Dr. Clemens' testing has been produced. (Exhs. C at ¶ 9 & D at ¶ 41.) The Federal Rules *prevent* the discovery of draft expert reports, communications that do not fall into the three exceptions in Rule 26(b)(4)(C), and counsel's decisions, thoughts, and analyses behind the information and assumptions provided to experts. Idenix has complied with the rules, and Gilead is not entitled to anything more.

                                                Respectfully,

                                                */s/ Andrew C. Mayo*

                                                Andrew C. Mayo (#5207)

ACM/nml
Attachments
cc: Counsel of Record (via electronic mail; w/attachments)